**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

2008 MAY -8 P 3: 38

| | |
|---|---|
| DESHAUN CARTER, SHONITA FORD, )<br>TARRENCE GORDON, DONALD )<br>HAWTHORNE, KERRY HAWTHORNE, )<br>DANA HOOPER, LARRY OSBORNE, )<br>BARRY REYNOLDS )<br>)<br>PLAINTIFFS, )<br>)<br>vs. )<br>)<br>DAEHAN SOLUTION ALABAMA, LLC )<br>DEFENDANT. ) | DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA<br><br>**CIVIL ACTION NO.:**<br>**2:07-CV-0988-WKW** |

**DEFENDANT'S MOTION FOR PROTECTIVE**
**ORDER TO DELAY PRODUCTION OF AUDIOTAPES**

**COMES NOW** Defendant Daehan Solution Alabama, LLC ("Daehan"), and pursuant to

Rule 26(c)(2), respectfully requests that the Court enter a protective order permitting Defendant

Daehan to delay production of certain audiotape voicemail messages of Plaintiff Barry Reynolds

until after the completion of Reynolds' deposition. In support of this motion, Daehan states as

follows:

1.      Plaintiffs commenced this action on November 2, 2007. (Doc. No. 1).

2.      In early April 2008, Daehan changed their legal counsel to the undersigned

counsel (hereinafter, the "Defendant's counsel"). On April 9, 2008, Defendant's counsel filed

their notice of appearance in this action.

3.      Several weeks later, Defendant's counsel obtained two cassette tapes which

Daehan recently discovered when clearing out the office of Daehan's former General Manager of

Human Resources, Rick Garrett. Daehan just recently provided the audiotapes to Burr &

Forman, but changed counsel before Burr & Forman had the opportunity to review the tapes for production.

4.      Defendant's counsel obtained possession of the audiotapes on or about April 16, 2008 when Burr & Forman turned over the client file upon the termination of their representation of Daehan. Since that time, Defendant's counsel diligently have reviewed and transcribed the contents of the tapes and have transferred the content to the enclosed CD for an *in camera* review by the Court in support of this motion. True and correct copies of a CD containing the audiotape voicemail messages and Defendant Daehan's attorney-client work product transcription thereof are set forth at Exhibits A and B, respectively, and have been filed contemporaneously herewith under seal.

5.      The subject audiotapes contain approximately 64 voicemail messages left by Plaintiff Barry Reynolds during December 2005 and January 2006 on the business, cell and home voicemail devices of Daehan's former General Manager of Human Resources, Rick Garrett. A bullet point summary generally describing the subject matter of the audiotape voicemail messages is set forth at Exhibit C filed contemporaneously herewith under seal.

6.      The majority of the statements contained in the voicemails of Plaintiff Reynolds have compelling impeachment value. Nevertheless, Daehan does not seek to withhold impeachment evidence, as would be its right under Rule 26(a)(1)(A)(ii), FED. R. CIV. P. In fact, Daehan does not contest the production of the audiotapes, as a party has a right to a copy of its own prior statements. *See* FED. R. CIV. P. 26(b)(3). Rather, Daehan seeks to delay production of the tapes until after Plaintiff Barry Reynolds has completed his deposition to (1) preserve the impeachment value of the evidence, *i.e.*, to discourage the plaintiff from altering his testimony in light of what the audiotapes reveal, and (2) allow Daehan the opportunity to determine the extent

of Plaintiff Reynolds' present unrefreshed recollection regarding the subject voicemail messages. Thus, the issue to be resolved is not whether, but when, Daehan must produce the tapes.

7.      Disputes involving the timing of specific depositions in relation to other discovery fall directly within the provisions of Rule 26(c)(2), FED. R. CIV. P.  The burden of showing good cause for a protective order rests on the party requesting relief. *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408 (M.D.N.C. 1991).  Courts which have noticed the presence of substantive elements in otherwise impeaching evidence may delay production until after a deposition which fixes a party's testimony and preserves the impeachment value of the evidence.  *Smith v. Diamond Offshore Drilling, Inc.,* 168 F.R.D. 582, 587 (S.D. Tex. 1996); *Dodson v. Persell,* 390 So.2d 704, 708 (Fla. 1980).  Protective orders sought under Rule 26(c)(2) which seek to regulate the terms, conditions, time or place of discovery are wholly within the court's discretion. *Hendrick v. Avis Rent A Car System, Inc.,* 916 F. Supp. 256, 260 (W.D.N.Y. 1996).

8.      Courts routinely delay the initial disclosure or requested discovery of audio and videotapes until after the recorded witness has testified under oath to preserve the impeachment value of the evidence, *i.e.,* to prevent a party or its witnesses from tailoring their testimony to conform with their prior recorded statements or actions.  This principle is cogently illustrated by the decision of *Poppo v. AON Risk Servs.,* 49 Fed. R. Serv.3d 120, 2000 WL 1800746 (S.D.N.Y. 2000).  In *Poppo,* the plaintiff sued the defendant corporation for sex discrimination.  She had possession of several audiotapes of conversations with officers and agents of the defendant.  The plaintiff claimed that the audiotapes supported her contention that the company discriminated against her because of her pregnancy.  Although the plaintiff acknowledged her obligation under Rule 26, FED. R. CIV. P., to disclose the audiotapes, she filed a motion for protective order asking the court to allow her to delay production of the tapes until after the depositions of the

3

witnesses whose statements were recorded.  The plaintiff argued that the delayed production would prevent the defendant's witnesses from altering their testimony to conform to their prior recorded statements.  The defendant, however, maintained that the statements were obtained without their knowledge or consent and, in any event, should be produced immediately.

9.    The Magistrate Judge agreed with the plaintiff's argument, holding as follows:

> Since biblical times the prospect of tailoring testimony and its ramifications has been understood and condemned.  This is presently seen most clearly in the sequestration of witnesses. Skipping some 2000 years, Second Circuit courts have delayed the production of audio or video tapes prior to one or more depositions in order to prevent the defendant or its witnesses from tailoring their testimony to conform with their prior recorded statements or actions. (cited cases omitted).

2000 WL 1800746 at *1.

10.    Similarly, in *Walls v. International Paper Co.*, 192 F.R.D. 294 (D. Kan. 2000), the plaintiff, who alleged sex discrimination and retaliation against the defendant company, sought to delay production of her surreptitious recordings of statements made to her by the defendant plant supervisor.   The plaintiff argued that delayed production of the taped conversations would deter any attempt by the manager to alter his testimony to conform to his earlier recorded statements.  The defendant opposed the production delay, asserting that the plant manager had the right to hear the tapes before his deposition to refresh his recollection of the four-year old conversations.  The court rejected the defendant's argument, finding that numerous courts similarly had delayed production of a party's statements until after the party's deposition to avoid the danger of tailored testimony.  The court reasoned that delaying production of the tapes would protect the interest of both parties in determining the extent of the plaintiff's present *unrefreshed* recollection and the plaintiff's interest in examining earlier recorded testimony prior to trial so that he may honestly explain any inaccuracies or errors in his present or past account.

*Id.* at 298. *See also Renteria v. Collectcorp*, Case No. C05-00415-HRL2005 WL 4019338 (N.D. Cal. 2005) (noting that a party's interest in obtaining unrefreshed recollection in a deposition is a valid basis for delaying the production of a witnesses' statement until after deposition). Accordingly, the court granted the plaintiff's motion for protective order, requiring that she provide to the defendant a copy of the tape recorded conversations upon completion of the plant manager's deposition.

11.     Thus, as illustrated by *Walls* and *Poppo*, courts may delay production of audiotapes in order to preserve the impeachment value of the evidence and to provide a party the right to hear the unrefreshed deposition testimony of the recorded witness.

12.     Many courts that have addressed this issue have delayed production of audio and videotapes until the completion of deposition testimony of the recorded witness.  *See also Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 438 (D. Md. 2006); *Renteria v. Collectcorp*, Case No. C05-00415-HRL2005 WL 4019338 (N.D. Cal. 2005) (granting plaintiff's motion for protective order to delay production of defendant's harassing voice mail messages until after the witness is deposed); *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582 (S.D. Tex. 1996) (requiring the plaintiff to commit by deposition to a description of the scope of his injuries prior to viewing the surveillance video); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 104 (E.D. N.C. 1993) (permitting defendant to delay the timing of disclosure of video surveillance tapes until after deposition to preserve the impeachment value of the evidence); *Ward v. CSX Transportation, Inc.*, 161 F.R.D. 38, 39-40 (E.D.N.C. 1995) (finding that Rule 26(b)(1) includes surveillance materials to be used for impeachment but delaying production until the completion of deposition); *Torres-Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D. Cal. 1994) (court granting protective order in Jones Act case allowing

5

defendant to delay production of recorded statement of plaintiff taken by representative of defendant until after plaintiff's deposition); *Boyle v. CSX Transp., Inc.*, 142 F.R.D. 435, 437 (S.D.W. Va. 1992) (allowing defendant to delay production of surveillance tapes until after the plaintiff who was surveilled was deposed); *Daniels v. Nat'l R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986) (allowing delayed production of surveillance video tape in products liability action); *Erie Conduit Corp. v. Metro. Asphalt Paving Assoc.*, 106 F.R.D. 451, 457 (E.D.N.Y. 1985) (denying defendant's access to plaintiff's secretly recorded tapes until after deposition); *Sherrell Perfumes, Inc. v. Revlon, Inc.*, 77 F.R.D. 705 (S.D.N.Y. 1977) (affirming issuance of protective order in an antitrust action allowing antitrust plaintiff who surreptitiously tape-recorded a series of personal telephone conversations with defendants or individuals associated with the defendants to produce the recordings after depositions of the individuals whose conversations were recorded).

13.    In the instant case, even a cursory review of the audiotapes and accompanying transcripts at issue establish that Plaintiff Reynolds is untrustworthy.  If provided the audiotapes in advance of his deposition, Reynolds undoubtedly would alter his testimony to conform to his recorded statements to explain away his inconsistencies and damaging statements and otherwise thwart the truth-seeking function of the Court.  In contrast, allowing Defendant Daehan to delay production of the audiotapes until after completion of Plaintiff Reynolds' deposition would protect the interest of both parties by preserving the impeachment value of the evidence while providing Plaintiff Reynolds an opportunity to review the audiotapes long before trial so that he may honestly explain any inaccuracies or errors in his present or past account.

14.    Finally, the facts of the instant case provide a more compelling case for the delay of production than the typical surveillance cases because, unlike evidence obtained by

surveillance or surreptitious recording, Plaintiff Reynolds knowingly and intentionally left the subject voicemail messages on the answering machines of Daehan's former General Manager of Human Resources, Rick Garrett, and presumably is aware of the statements he made therein. Thus, any alleged element of surprise is limited by this fact. In sum, the principle of truth-seeking, a primary goal of the discovery process, is protected by delaying production of the tapes.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Daehan Solution Alabama, LLC respectfully requests that the Court grant this motion and permit Daehan to delay production of the subject audiotapes of Barry Reynolds until after the completion of his deposition.

Respectfully submitted this 8th of May, 2008.

CONSTANCE S. BARKER (BAR099)
BRUCE J. DOWNEY, III (DOW006)
CHRISTOPHER W. WELLER (WEL020)

Attorneys for Defendant Daehan Solution
Alabama LLC

Address of Counsel:

CAPELL & HOWARD, P.C.
P. O. Box 2069
Montgomery, AL  36102-2069
334/241-8000

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document has been filed using via U.S. Regular Mail, postage prepaid, to all parties listed below on this the 8th day of May, 2008:

| | |
|---|---|
| LEE D. WINSTON, ESQ.<br>RODERICK COOKS, ESQ.<br>WINSTON & COOKS, LLC<br>The Penick Building<br>319-17th Street North<br>Birmingham, AL 35203 | BYRON R. PERKINS<br>THE COCHRAN FIRM<br>505 North 20th Street, Suite 825<br>Birmingham, Alabama 35203 |
| DESHAUN CARTER<br>3123 Rane Drive<br>Montgomery, AL 36108 | SHONITA FORD<br>P.O. Box 418<br>Fort Deposit, AL 36032 |

Of Counsel