IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DeSHAUN CARTER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 2:07-CV-988-WKW [WO] |
| | ) |
| DAEHAN SOLUTIONS ALABAMA, LLC, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Before the court is a motion for summary judgment (Doc. # 65), filed by Defendant Daehan Solutions Alabama, LLC ("Daehan"), on all claims brought by Plaintiff Barry Reynolds. The motion is accompanied by a brief (Mot. Summ J. Br. (Doc. # 66)) and an evidentiary submission (Doc. # 67). Mr. Reynolds filed a response in opposition to the motion. (Resp. in Opp'n to Summ. J. (Doc. # 88)). Mr. Reynolds has sued Daehan for discrimination based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981,[1] and for state law violations. Having carefully reviewed the submissions of evidence, Daehan's brief and Mr. Reynolds's response, and after careful consideration of the applicable law, the court finds that there are

---

[1] The same analysis applies to claims under Title VII and § 1981, so they will be addressed together. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) ("[A]s we have repeatedly held, '[b]oth of these statutes [(*i.e.*, section 1981 and Title VII)] have the same requirements of proof and use the same analytical framework.'" (second and third alterations in original) (citation omitted)).

no material facts in dispute and that Daehan is entitled to judgment as a matter of law.

## I. JURISDICTION AND VENUE

The court has jurisdiction over the subject matter of this action. *See* 28 U.S.C. §§ 1331, 1343, 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element

of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the evidence on which the nonmoving party relies, however, "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*) (stating that plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Thus, in cases where the evidence is admissible on its face or can be reduced to admissible form and establishes there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24.

## III. FACTS AND PROCEDURAL HISTORY

The following are the relevant facts. Mr. Reynolds, an African-American male, was hired by Rick Garett, the general manager of human resources, in 2004 to work for Daehan. (Reynolds Dep. 68 (Doc. # 67, Ex. F).) He was employed by Daehan as a maintenance mechanic from June 1, 2004, until December 11, 2005, at which time he was terminated for disruptive conduct. (Compl. ¶¶ 61, 64; Reynolds Termination Letter (Doc. # 67, Ex. N).)

After a verbal confrontation with a supervisor on December 7, 2005, Mr. Reynolds was placed on disciplinary leave with sixty days of probation and was given a final warning about his behavior. (Employee Warning Not. (Ex. I to Def.'s Evidentiary Submission).) Upon his return to work on December 14, 2005, Mr. Reynolds was involved in another verbal confrontation, this time with two supervisors, when he interjected himself into a discussion between the supervisors and another employee. (Reynolds Dep.144.) Mr. Reynolds asserts that the supervisor called him a "nigger" (Reynolds Dep. 144), angering Mr. Reynolds, who, in his own words, "got physical with" the other employee. (Reynolds Dep. 144; Report of Incident (Doc. # 67, Ex. J).) Mr. Reynolds knew that he might be fired as a result of his escalating a verbal confrontation to a physical one. (Reynolds Dep. 144-145.) After this argument, Mr. Reynolds walked off the job, (Reynolds Dep. 147), and was terminated (Reynolds Termination Letter).

On November 2, 2007, Mr. Reynolds commenced this lawsuit, alleging discrimination based on race in violation of Title VII and § 1981 (Count I), the existence of a hostile work

5

environment (Count II), and retaliation (Count III). He also asserts state-law negligence claims (Counts V and VI).[2] Daehan denies that it discriminated, retaliated, or was negligent, and moves for summary judgment on all claims.

## IV. DISCUSSION

### A. Race Discrimination and Retaliation (Count I)

Mr. Reynolds alleges that Daehan discriminated against him on the basis of his race, African-American, in violation of Title VII and § 1981, by demoting him and eventually terminating his employment. (Compl. ¶¶ 60-65; Reynolds Answer to Second Interrogs. 4 (Ex. M to Def.'s Evidentiary Submission).) Mr. Reynolds has not argued that this is a "direct evidence" case. The analysis is therefore governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that rubric, a plaintiff establishes a *prima facie* case of discrimination by using circumstantial evidence to show that: (1) he belongs to a protected racial group; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his protected class more favorably; and (4) he was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

The establishment of a *prima facie* case creates a presumption of discrimination. An employer must offer a legitimate, nondiscriminatory reason for the adverse employment action in order to rebut this presumption. If Daehan offers such a reason, the burden of

---

[2] Originally, this case had six additional plaintiffs, whose claims have since been settled. Count IV of the complaint was not alleged by Mr. Reynolds and will not be addressed.

<span style="text-align:center"></span>

production shifts back to Mr. Reynolds to show that the nondiscriminatory reason proffered by Daehan is a pretextual one. *McDonnell Douglas Corp.*, 411 U.S. at 802-804.

### *1. Demotion*

Mr. Reynolds asserts that a transfer from working in a supervisory maintenance position to a job on the production line was a demotion because it resulted in a "cut [in his] pay." He alleges that this demotion was motivated by his race. (Reynolds Answer to Second Interrogs. 4; Reynolds Dep. 90-91, 93-94.) Mr. Reynolds claims that this change in his position resulted in his pay being decreased from seventeen dollars per hour to twelve dollars per hour. (Reynolds Dep. 155-56.)

Daehan does not contest that Mr. Reynolds has made a *prima facie* case, but focuses on providing a legitimate, nondiscriminatory reason for moving Mr. Reynolds to a different work area and reducing his pay. (Mot. Summ. J. Br. 23-24.) Daehan asserts, and Mr. Reynolds concedes, that the decision to move Mr. Reynolds to the production line "was based on a legitimate need [for] additional production employees." (Mot. Summ. J. Br. 24; Reynolds Dep. 155 & 160.) Five months after this alleged demotion, Mr. Reynolds was given the opportunity to return to his previous, higher-paying supervisory job, an opportunity which he turned down. (Reynolds Dep. 24, 66-67, 160-61.) He also turned down a second supervisory position around the same time. (Reynolds Dep. 66-67.) Mr. Reynolds fails to offer any evidence to rebut Daehan's proffered reason for his reassignment and even admits that Daehan's decision to move him was based upon business need. For these reasons, Mr.

7

Reynolds's Title VII demotion claim fails.

### 2. *Termination*

Mr. Reynolds also claims that his termination was due to his race. Daehan again focuses its response on providing a nondiscriminatory reason for the termination. (Mot. Summ. J. Br. 16-17.)

Daehan asserts that Mr. Reynolds was fired for unacceptable workplace behavior, including "abandoning his job and his well-documented pattern of profane outbursts." (Mot. Summ. J. Br. 16.) Daehan also cites incidents of verbal and physical confrontations involving Mr. Reynolds. (*See* Employee Warning Not.; Garrett Aff. ¶ 6 (Ex. A to Def.'s Evidentiary Submission).)

Mr. Reynolds admits he was involved in at least one physical confrontation immediately preceding his termination (Reynolds Dep. 144), after which he walked off the job (Reynolds Dep. 147; Garrett Aff. ¶ 6). Mr. Reynolds stated that he realized that initiating a physical dispute could cost him his job (Reynolds Dep. 145),³ but offers evidence, in the

---

³ Mr. Reynolds's deposition is probably better read as containing an admission that he knew that his actions were *in fact* likely to lead to his firing, rather than containing an admission that the reason given for his firing (starting a physical confrontation) was sufficient as a matter of law to justify his termination. It would be odd at best to read such a legal concession into the deposition of a layperson. Moreover, the court recognizes that Mr. Reynolds is proceeding *pro se*, and provides him generally with the "liberal construction" due his pleadings. *Day v. Hall*, 528 F.3d 1315, 1316 (11th Cir. 2008).

Nonetheless, Mr. Reynolds has not provided, and the court is unaware of, any authority providing that an employment-discrimination plaintiff is entitled to mount a physical response to the use of even highly offensive racial slurs, such as the one used here. More precisely, there has been no showing that Daehan was somehow necessarily forbidden to terminate Mr. Reynolds for the physical confrontation if the physical confrontation was provoked by a racial slur. Therefore, the court concludes that Daehan has proffered a nondiscriminatory reason, and proceeds to the issue of pretext.

form of his deposition, that Daehan's proffered reason for termination is pretextual.

Mr. Reynolds claims that Production Manager James Savelle , his superior, called him a "nigger," thereby angering Mr. Reynolds and causing him to engage in a physical confrontation with Mr. Savelle. (Reynolds Dep. 144-45.) The court must determine, based upon the totality of the evidence, whether Mr. Reynolds "has cast sufficient doubt on the defendant's proffered non-discriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

If Mr. Savelle had been involved in the decision to terminate Mr. Reynolds, the described incident "may contribute to a circumstantial case for pretext, [but] it will usually not be sufficient absent some additional evidence supporting a finding of pretext." *Scott v. Suncoast Beverage Sales*, 295 F.3d 1223, 1229 (11th Cir. 2002) (citations omitted). That is not what happened here. Mr. Reynolds was terminated by Rick Garrett and Michael Quann (Resp. in Opp'n to Summ. J. ¶ 3; Garrett Aff. ¶ 6), and he does not assert that Mr. Savelle took part in this decision. Because no evidence has been produced to show that Mr. Savelle was involved in the decision to terminate Mr. Reynolds, this isolated comment alone does not establish pretext for discrimination on its own.

Additionally, in his deposition Mr. Reynolds makes two allegations of racial discrimination against Mr. Garrett. First, Mr. Reynolds claims that Mr. Garrett discriminated against African-Americans at a prior job. (Resp. in Opp'n to Summ. J. ¶ 6.) Second, Mr.

9

Reynolds asserts that Mr. Garrett does not post managerial positions and "give[s] [the] position[s] [to] white male[s] or female[s]." (Resp. in Opp'n to Summ. J. ¶ 3.) Mr. Reynolds cannot rely solely on conclusory allegations to avoid summary judgment. *Celotex*, 477 U.S. at 324. Because the record contains no other evidentiary details, his attempt to show pretext fails.

Having failed to rebut Daehan's proferred legitimate, nondiscriminatory reasons for its actions, Mr. Reynolds's termination claim fails. Summary judgment is due to be entered in favor of Daehan on his Title VII discriminatory demotion and termination claims.

### B. Hostile Work Environment (Count II)

A Title VII or § 1981 hostile work environment claims "'are based on the cumulative effect of individual acts.'" *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir.), *cert. denied*, 129 S. Ct. 404 (2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 356 U.S. 101, 117 (2002)). Mr. Reynolds asserts a claim for hostile work environment based upon race, claiming that employees were allowed to wear t-shirts and hats with Confederate flags on them, that Mr. Savelle flew a Confederate flag at his own home and had a Confederate flag sticker on his locker, and that Mr. Savelle called Mr. Reynolds a "nigger." (Compl. ¶¶ 63, 75-77; Reynolds Dep. 124-29; Reynolds Dep. 111-12, 114-16, 124-29.)

To recover for a hostile work environment, an employee must prove that: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on his membership in a protected group; (4) the harassment was

10

sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment; and (5) a basis for holding the employer liable exists. *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 (11th Cir. 2002). Daehan argues that it is entitled to summary judgment because Mr. Reynolds fails to prove the fourth element – that the totality of the harassment was severe or pervasive. (Mot. Summ. J. Br. 33.)

The Supreme Court has identified four factors to consider when assessing severity or pervasiveness:[4] (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). Furthermore, an isolated incident is not enough to establish a hostile environment; "[i]t is repeated incidents of . . . harassment that continue despite the employee's objections [that] are indicative of a hostile work environment." *Miller*, 277 F.3d at 1276 (citation and internal quotation marks omitted). Furthermore, infrequent incidents usually will not support a hostile work environment claim. *See Mosley v. Meristar Mgmt. Co., L.L.C.*, 137 F. App'x. 248, 252 n.3 (11th Cir. 2005) (noting that two incidents of racial epithets would have been insufficiently severe to support a hostile work environment claim).

   1.   **Faragher *Factors (1)-(3)***

Mr. Reynolds's hostile work environment claim is based, in part, upon his observance

---

[4] These factors are not, however, an exhaustive list of what may be considered. *See, e.g.*, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 24 (1993) (Scalia, J., concurring); *Miller*, 377 F.3d at 1276.

of two employees wearing t-shirts with Confederate flags on them and one of these employees also wearing a baseball cap with a Confederate flag on it. (Reynolds Dep. 124-29.) Mr. Reynolds concedes that soon after he complained about the attire of these two individuals, Daehan instituted a dress code, which included providing uniform employee shirts. (Reynolds Dep. 129-130; Garrett Aff. ¶ 4.)

In his response, Mr. Reynolds also refers to a sticker of a Confederate flag that was displayed on Mr. Savelle's locker. (Resp. in Opp'n to Summ. J. ¶ 8.) Mr. Reynolds testified that he (Mr. Reynolds) removed the sticker from Mr. Savelle's locker and suffered no repercussions for this action. (Reynolds Dep. 111-12, 114-16.) The mere presence of an offensive sticker, which was removed, coupled with offensive clothing, which was thereafter restricted, does not rise to the level of a hostile work environment because they were not repeated incidents, nor did they continue after Mr. Reynolds complained, as would be indicative of a hostile work environment under *Miller*.

The second situation Mr. Reynolds uses to support his hostile work environment claim is that Mr. Savelle flew a Confederate flag in the front yard of his home in July and August of 2004. (Reynolds Dep. 119, 123; Resp. in Opp'n to Summ. J. ¶ 7.) After this period of time, it was removed. (Reynolds Dep. 121-122.) Mr. Reynolds's complaint refers to actions that did not occur at work and were apparently not related to the workplace. Mr. Reynolds fails to explain how the flag allegedly displayed at Mr. Savelle's house affected his "terms and conditions of employment and create[d] an abusive working environment." *See*

*Faragher*, 524 U.S. at 787-88. Additionally, Mr. Reynolds has not demonstrated a basis for holding Daehan responsible for the actions of Mr. Savelle outside the workplace.

Mr. Reynolds contends that during the confrontation immediately preceding his termination, Mr. Savelle called him a "nigger." (Compl. ¶¶ 63 & 64; Reynolds Dep. 144.) In *Mosley*, the court found that a single utterance of a racial epithet did not constitute severe or pervasive harassment. Therefore, Mr. Savelle's single use of a racial epithet, while not condoned by the court, is not severe enough to support a hostile work environment claim, and Mr. Reynolds provides no evidence that such epithets occurred more frequently. *See Mosley*, 137 F. App'x at 252 n.3.

Mr. Reynolds's hostile work environment claim fails the first three elements of the *Faragher* test. He presents no evidence that the occurrences of which he complains were frequent, or that they were severe. He also does not assert that these instances were physically threatening or humiliating, nor does he present evidence that the single racial epithet spoken by Mr. Savelle was more than "a mere offensive utterance." *Faragher*, 524 U.S. at 787-88.

### 2. Faragher *Factor (4)*

The final consideration under *Faragher* is whether the conduct complained of unreasonably interfered with Mr. Reynolds's job performance. *Faragher*, 524 U.S. at 787-88. The court recognizes, in analyzing unreasonable interference with job performance, that the conduct "need not have tangibly affected the plaintiff's job performance in order to be

actionable." *Harris*, 510 U.S. at 22. But Mr. Reynolds fails to claim that these instances affected his job performance *at all*. Furthermore, while Mr. Reynolds contends that these instances created a hostile work environment, he admits that once he complained about the Confederate flag t-shirts and baseball cap, the offenders stopped wearing these items and a workplace dress code was imposed shortly thereafter. (Reynolds Dep. 129-30.) Any problem relating to co-workers' clothing choices was remedied, which militates against the existence of a hostile work environment. Incidents that continue in spite of or without regard to an employee's objections are better indicators of a hostile work environment. *Miller*, 277 F.3d at 1276.

### 3. *Conclusion*

Mr. Reynolds's allegations regarding workplace dress, the flying of a Confederate flag at Mr. Savelle's house, a Confederate flag sticker on a locker, and Mr. Savelle's use of the "n-word," when considered as a whole, are insufficient to establish the required baseline for an actionable hostile work environment claim. Together, the alleged events were not frequent, severe, or physically threatening and humiliating enough to constitute a hostile work environment. Nor, ultimately, did they interfere with Mr. Reynolds's job performance sufficiently to satisfy the *Faragher* test. Accordingly, summary judgment is due to be entered in favor of Daehan on this claim.

## C. Retaliation (Count III)

"To make a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1156 (11th Cir. 2009). A causal connection can be established through evidence "'that the protected activity and the adverse action were not wholly unrelated.'" *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). "[T]o show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action," *id.*, and that there is a "'close temporal proximity' between the protected expression and [the] adverse . . . action," *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)).

Mr. Reynolds alleges that he was fired in retaliation for filing an EEOC charge (Compl. ¶ 82) and for "opposing Mr. Savelle referring to [him] as a nigger" (Resp. in Opp'n to Summ. J. ¶ 5), but provides no evidence in support of either allegation. Mr. Reynolds provides no evidence that he "engaged in an activity protected under Title VII" prior to his termination, as is required to establish a retaliation claim under *Corbitt*. The only evidence of a protected activity is the filing of the EEOC charge, which occurred on February 7, 2006,

two months after Mr. Reynolds's termination on December 11, 2005. (EEOC Charge (Doc. # 67, Ex. G)). All of the adverse employment actions alleged – demotions, failures to promote, and termination – occurred before the EEOC charge was filed[5] and, therefore, Mr. Reynolds cannot show that "the decision maker was aware of the protected conduct at the time of the adverse employment action," *Higdon,* 393 F.3d at 1220. Mr. Reynolds alleges no protected activity that predates the alleged adverse employment actions, as is required to establish a *prima facie* case, and his retaliation claim fails for this reason at the *prima facie* case stage.

### D. State-Law Negligence (Counts V & VI)

In Counts V and VI, Mr. Reynolds brings state-law claims for negligent hiring and negligent retention. Because Daehan is entitled to summary judgment on the federal-law claims presented (Counts I, II, & III), no claims over which the court has original jurisdiction remain. In its discretion, the court declines to exercise supplemental jurisdiction over the state-law claims in Counts V and VI. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). Those claims will be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

Daehan's motion for summary judgment identifies the portions of the record showing

---

[5] In his answer to Daehan's Second Interrogatories, Mr. Reynolds asserts that he had a pending EEOC charge at the time of his termination. No further information is provided in the record regarding this EEOC charge. (Reynolds Answer to Second Interrogs. 4.)

that there is no genuine dispute as to any material fact. Even liberally construing Mr. Reynolds's brief in light of his *pro se* status, he presents no evidence that would allow a reasonable fact-finder to render a verdict in his favor. *See Greenberg*, 498 F.3d at 1263; *Waddell,* 276 F.3d at 1279.

Accordingly, it is ORDERED that Daehan's motion for summary judgment (Doc. # 65) is GRANTED. It is further ORDERED that Mr. Reynolds's federal-law claims (I, II, & III) are DISMISSED with prejudice, and his state-law claims (IV, V) are DISMISSED without prejudice.

An appropriate judgment will be entered.

DONE this 1st day of February, 2010.

                                          /s/  W. Keith Watkins
                                   UNITED STATES DISTRICT JUDGE